CASE 39—PETITION EQUITY—FEBRUARY 14.

# Ten Broeck v. Fidelity Trust and Safety Vault Company.

APPEAL FROM LOUISVILLE CHANCERY COURT.

COMPENSATION OF TRUSTEE.—A father, as trustee for his daughter, paid over to her, quarterly, for several years prior to his death, the income on the trust fund of two hundred thousand dollars, without making any deduction as compensation for his services. His attention was called to the fact that he was entitled to compensation, and his reply was, in substance, that the condition of his daughter required the

Ten Broeck v. Fidelity Trust and Safety Vault Company.

entire income, and that the charge could be made at some future time. The trustee having died, his administrator now asserts a claim to compensation for his intestate's services as trustee, for the benefit of his creditors, the trustee having died insolvent. *Held*—That the father had the right to make his services gratuitous, and the intention to charge, at some future day, if conceded, creates no obligation on the daughter to pay for such services, the father having, by his conduct, induced her to believe that he waived his right to compensation. Nor is it any fraud on creditors to refuse, at their instance, to compel payment by the child in a case like this.

BROWN, HUMPHREY AND DAVIE FOR APPELLANT.

1. Mr. Smith's actions show conclusively that he did not intend to charge his sick, troubled and needing daughter for his services as trustee from 1882 to his death on April 20, 1887. This is shown by the fact that while he deducted regularly each four months his commissions from the income of the infant children, he made no charge or deduction from his daughter's income, but sent it to her to spend entire, and without notifying her that there was any accumulating claim reserved in his favor. When one thus performs a service for another with no intention at the time to charge for it, his administrator can not (as he could not) afterwards convert the act of affection or benevolence into a pecuniary obligation against the donee. (James v. O'Driscoll, 2 Ray (S. Car.), 101.)

2. If it were shown that Mr. Smith, during the latter part of the time, sometimes expressed an intention (not in the presence or to the knowledge of his daughter) to some day claim for those commissions unclaimed in the past, such evidence would be incompetent against her. And his actions in continuing thereafter to send her the entire income, with no explanation as to commissions not being deducted, or that they would afterwards be claimed, show stronger than words that his real and fixed intent was not to charge.

3. The fact that it turned out, after his death, that Mr. Smith was insolvent did not create in his administrator a right to reverse his accounts, and claim these past commissions. The creditors of an insolvent have no right to compel him to charge for his labor. He has the right to work for nothing, although he may owe debts and be insolvent. (Abbey v. Deyo, 44 New York, 347; Johnson v. Silsbee, 49 New Hampshire, 544.)

4. The will of H. D. Newcomb, under which Mr. Smith acted as trustee for his daughter, provided that the trustee should pay to her the net income, which it defined as the income which remains after paying all taxes and charges, and that neither she nor the trustee should in any way encumber or anticipate said income or any part thereof. It was the duty of the trustee, if he intended his commissions to be a

" charge," to deduct them at the time; and to allow the trustee, after paying over to her for years what he treated as, and led her to believe to be, the net income, to afterwards unexpectedly present such a claim for accumulated back commissions as will absorb six months' or a year's income to pay it, would be to anticipate and encumber that future income, and would be an unallowable violation of the will. It would be the same in principle and result as if he had taken out commissions each time, and then loaned them to her as an advancement and encumbrance upon her future income. (In re Brittell, 2 De Gex & Jones, 79.)

J. K. GOODLOE, DODD & GRUBBS and J. C. DODD for appellee.

1. A postponement by a trustee of a charge for services is not a gift of the services nor an estoppel against a subsequent charge therefor. (Phillips v. Bustaed, 1 B. M., 349; Greaning v. Fox, 12 B. M., 190; Fleming v. Wilson, 6 Bush, 611; Clark v. Anderson, 10 Bush, 103.)
2. There should be positive evidence that the trustee waived his right to compensation before the court should disallow the claim.
3. The inhibition against incumbrances and anticipations contained in the bequest does not apply to this claim.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

H. D. Newcomb, by his last will, devised to John B. Smith and Thomas L. Barret two hundred thousand dollars, to be held in trust and invested in safe securities, "so as to yield an income, which, after paying all taxes and charges thereon, shall be applied by said trustees to the continual support and maintenance of my wife, Mary Cornelia Newcomb, and her children, free from the control, use or enjoyment of any husband she may have; but neither the said trustee, nor Mrs. Newcomb, nor any future husband, nor her child or children, shall at any time have the power, right or authority, in any way, manner, or for any purpose, to encumber or anticipate the said fund or the said income, or any part thereof, for any purpose whatever; and in case these instructions are violated, this bequest at once shall be void, and the fund become a part of

my residuary estate ; and in case of her death without child or children, issue of my marriage, whether living, or leaving descendants, the said fund shall be a part of my residuary estate."

The devisor also bequeathed to the trustees, for his two infant children, the sum of one hundred thousand dollars each, and provided that, if one of the trustees should die, or decline to act, the remaining trustee was invested with the power to appoint another, with like powers, etc.   Barret refused to·act as trustee, and John B. Smith selected George W. Morris in his stead. Smith was the father of Mrs. Newcomb, the widow of the devisor, and was the actual manager of the trust estate, both for his daughter and her children.   Newcomb died in the year 1874, and no settlement was had by Smith, as trustee, until July, 1882.   Up to that settlement no charge had been made by the trustee for his services, either against his daughter or her children.   It seems that the trustee had given his notes, payable on demand, for what he had used of the trust money, amounting to four thousand dollars, and the Chancellor allowed him, as commission at that time, five per cent. on income, and one and a half per cent. on investments.   After that date, in July, 1882, he continued to charge his grandchildren his commission regularly up to his death, but made no charge against his daughter for managing the trust from which her income was derived.   Smith died in April, 1887, leaving his wife his executrix.   The office of trustee becoming vacant, by reason of his death, the present appellee, the Fidelity Trust and Safety Vault Company, was appointed trustee in his place, and Mrs. Smith resign-

ing as executrix, the Fidelity Trust and Safety Vault Company was appointed and qualified as administrator, with the will annexed, of her husband. This controversy is, therefore, with this corporation, as the trustee of Mrs. Ten Broeck (Mrs. Newcomb having married Ten Broeck) on the one hand, and as administrator of Smith on the other. The question arises from the claim made by the appellee, as administrator of John B. Smith, against Mrs. Ten Broeck for commissions or compensation to him for managing the trust fund, in which she was interested from the year 1882 until his death in 1887.

Smith died insolvent, and this is, in fact, a claim asserted by the administrator for the benefit of creditors. After the death of her father, Mrs. Ten Broeck demanded her income, and was told that his commissions would have to be deducted, and she claiming that the services rendered were gratuitous, and such as her father had the right to donate to her, by reason of the relation between them, that of parent and child, declined to pay the commission, and hence this appeal. The claim of the appellee is, and upon that the Chancellor based his judgment, that the father paid to his daughter the whole of each quarterly income, from the year 1882 until the year 1887, without making any deduction for compensation, because her necessities demanded it. After the settlement in 1882, he continued to deduct his commissions from the income and investments made or paid to his grandchildren, and kept a separate account as to the income of the appellant. He had made judicious investments of the principal, so as to enable him to pay his daughter a

quarterly income, that was paid regularly by check without any deduction whatever. He had a large fund to invest and control for his grandchildren, and may have supposed that his compensation arising from that fund was ample to pay him for controlling the whole, or that, looking to the wants and necessities of his daughter, he ought not, in justice to her, demand pay for his services. The latter reason, no doubt, prompted him to make no charge, and while her income was large, it is apparent from the facts of the record that his daughter needed the entire amount. The attention of her father, who was then at the head of one of the leading banking institutions in the city of Louisville, was called time and again to the fact of his failure to make any deductions for services on this income paid to his daughter, and his reply was in substance that the condition of his daughter required it, and that the charge could be made at some future time. There is proof tending to show that, in the year 1886, he talked of making a settlement, including these charges, but was prevented by the absence of his daughter's attorney from making it, and yet he continued, up to his death, to make the quarterly checks without any deduction, and it is plain that when the opportunity was presented he declined to do so, because such was not his purpose. His trust had been faithfully executed, the income to a cent paid over, and no charge made.

Besides, such a fund, with the facilities afforded him in his bank for managing it, could not have been attended with much expense or trouble, and under the circumstances we perceive no reason why he should

have claimed compensation. He may have intended, at some future time, and doubtless did, when the necessities of his daughter for money became less urgent, to exact from her compensation for his services; but it is manifest from the record that such a time had not arrived at the date of his death, and that he was forwarding this money and the daughter receiving it with no intention on his part to make any charge, or his daughter of paying, until circumstances had changed with reference to her pecuniary condition.

It is true the daughter had no legal or equitable right to exact from her father the discharge of these duties as a mere gratuity, but the father had both the legal and natural right to aid his daughter in the transactions connected with this trust free of charge on his part, and we think that such was his purpose, as is evidenced from his conversations with Burford, and the manner in which he disposed of this income from 1882 until his death. He made regular charges against his grandchildren, and it is not unnatural or unreasonable that he should decline to make any other charge for his services at the expense of the welfare and happiness of his child. He never changed his intention or purpose with reference to this compensation. The same circumstances, appealing to his affection for his daughter, and inducing this generosity on his part, existed at his death that influenced his whole action from the year 1882. His personal representative should not be allowed to change that intention, or to show that the surrounding circumstances demanded an exaction of compensation during the entire period, instead of a gratuitous discharge of services prompted by

parental affection. It is no fraud on the right of creditors, or depriving them of any legal or equitable right as against the father or his estate, to refuse, at their instance, to compel payment by the child in a case like this. He had the right to make his services gratuitous, and the intention to charge at some future day, if conceded, created no obligation on the part of Mrs. Ten Broeck to pay for such services.

In Abbey v. Deyo, 44 N. Y., 347, it was held that such gratuitous services did not prejudice the rights of creditors, and in James v. O'Driscoll, 2 Ray, S. C., 101, the court, in speaking of a purpose to charge for a benevolent or friendly act at a future day, said "that it will never permit a friendly act, or such as was intended to be an act of kindness or benevolence, to be afterwards converted into a pecuniary demand; it would be doing violence to some of the kindest and best affections of the heart to suffer them afterwards to be perverted by sordid avarice."

The testimony of the book-keeper explains this whole transaction. The bad health and pecuniary condition of Mrs. Ten Broeck was always referred to as a reason for not making any charge, but coupled with the intention to do so when her condition was improved. The appellant had the right to presume that the father did not contemplate such a charge, and from the proof in the record, if the father had been alive, and the demand made for the income in 1887, there would have been no refusal to pay. He had no intention of misleading his daughter by inviting her, in effect, to live up to her income, and after the lapse of years violate the express provisions

of the trust by imposing a burden upon it in the way of commissions that would or might, for the time being, have deprived her of any income whatever. The income was in no manner to be anticipated, but paid over to the beneficiary after deducting all charges. This fact is another strong circumstance showing a purpose to make no charge. The declarations of his intentions are inconsistent with his whole conduct in the control of the trust estate, and yet only such declarations as any father would likely have made, with his surroundings, and still have no purpose of carrying them into effect.

If the purpose, however, was to charge the daughter when her condition improved, that does not authorize his personal representative to create this burden, and exact a compensation that the father had, by every act, induced the daughter to believe had been waived.

The judgment below is reversed, with directions to sustain the exceptions to the commissioner's report awarding this compensation to be paid out of either the principal or the income of the fund from which the appellant derives the benefit. Remanded with directions to reject the claim.